MAURO BRUNO V. STATE OF NEBRASKA.

FILED FEBRUARY 26, 1924.   No. 23425.

1. **Criminal Law:** WEIGHT OF EVIDENCE. The weight of testimony is not necessarily determined by the number of witnesses. In determining the weight of evidence and the credence to be given witnesses, the triers of fact are free to consider all the surrounding facts and circumstances.

2. **Homicide:** EVIDENCE: QUESTION FOR JURY. Evidence outlined in the opinion *held* sufficient to call for the submission of the cause to the jury to determine the question of defendant's connection with the shooting charged in the information.

3. ———: INTENT: QUESTION FOR JURY. When on the trial of one charged under section 9553, Comp. St. 1922, with shooting another with intent to kill, there is proof that the party making the assault stood at a distance of from 25 to 40 feet from the party assaulted and with a shotgun fired two loads of No. 6 shot into the body of the person assaulted, it is proper for the court to submit to the jury the question of the intent with which the shots were fired.   /

4. ———: MALICE: QUESTION FOR JURY. When on the trial of one charged, under section 9553, Comp. St. 1922, with shooting another with intent to kill, there is proof that defendant with a shotgun, at a comparatively short range, twice shot and inflicted wounds upon the person of the complaining witness, the question of malice, like every other question of fact presented, becomes a question for the determination of the jury.

5. **Evidence** *held* sufficient to sustain the verdict.

ERROR to the district court for Douglas county: CARROLL O. STAUFFER, JUDGE. *Affirmed.*

*Bigelow & LaViolette,* for plaintiff in error.

*O. S. Spillman, Attorney General,* and *George W. Ayres, contra.*

Bruno v. State.

Heard before MORRISSEY, C. J., LETTON, ROSE and GOOD, JJ., REDICK and SHEPHERD, District Judges.

MORRISSEY, C. J.

Defendant prosecutes error from a conviction for shooting with intent to kill. It is argued that the evidence as to defendant's connection with the shooting was insufficient to warrant the submission of the cause to the jury. At the time the crime is alleged to have been committed, September 22, 1922, defendant resided with his family at 5514 North Sixteenth street in the city of Omaha. The complaining witness, Joseph Vargo, resided with his family in the house immediately south of defendant's house. At defendant's house there lived a man named LaFortazzo, together with his wife, and a man named Joe Maiellai. Defendant, LaFortazzo, and the complaining witness, Vargo, had all formerly been employed in the shops of the Missouri Pacific Railway Company. Some months before the commission of the crime, these men had joined in a general strike which extended over several railroad systems. On the evening of September 22, 1922, Vargo was passing in front of defendant's home and stopped for a short time to have a friendly visit with his neighbors. Without controversy, it appears that there were then on the porch of defendant's home Mr. and Mrs. LaFortazzo, Mr. Maiellai, a neighbor named Folisi, and defendant's wife. Vargo testified that defendant was also present, but this is denied by defendant and his witnesses. The party conversed for a few moments about the strike. Vargo is said to have expressed the opinion that it was lost and to have announced that he had returned to work, but no acrimonious debate developed. Vargo testified that while he was engaged in this conversation defendant left the party, entered the house, and was not seen again by him. After Vargo visited for a few moments at defendant's home, he walked to the front door of his own house, but, finding it locked, proceeded to a side door near the rear of the house. While he was in the act of opening the door, which led

Bruno v. State.

onto a small screened porch, he was struck by a charge of
No. 6 bird-shot. Almost immediately thereafter he was
struck by a second charge of the same kind of shot and fell
on the porch. His wife immediately ran to his assistance
and helped him into the house. A physician was called,
and the police were notified of the shooting. Shot were
found in the clothing and skin of Vargo extending from
his feet to his face. The shot had not penetrated his body
to any considerable depth, and, under proper medical treat-
ment, he made a complete recovery. Upon the arrival of
the police officers, they went to defendant's home, and there
found the parties heretofore named, LaFortazzo, Folisi,
Maiellai, Mrs. LaFortazzo, and Mrs. Bruno, but defendant
was not found. The offcers took the three men found at
defendant's home to the home of Vargo, where, according
to some of the witnesses, both for the state and for defend-
ant, Mr. and Mrs. Vargo accused Folisi of having done the
shooting. However, it is claimed by Vargo that he asked
the officers to arrest all four of the men, defendant as well
as the three then in custody. Whether acting under direc-
tions of Vargo or upon their own volition is not material,
but, while still holding the three men who were then under
arrest, they returned to defendant's home in an effort to
arrest him. While the officers were still at his home, it is
claimed that defendant called his wife over the telephone
from a drug store a few blocks from his home. He soon
thereafter arrived at his home and was placed under ar-
rest. Defendant and his three friends, heretofore men-
tioned, were all detained by the police until released on bail.
Later in the evening a shotgun, which apparently had been
thrown away by some person who feared the consequences
of being found with it in his possession, was found a few
blocks from defendant's home. Shells found in the gun
and shells found in defendant's home were offered in evi-
dence and are attached to the bill of exceptions. There is
some confusion over the identification of these shells be-
cause of carelessness in tagging them or in the loss or re-
moval of certain of the tags. These shells appear to have

been made by two different manufacturers, some being marked "Schultz," while the others are marked "DuPont," but they are all loaded with No. 6 shot and are of the same gauge.

Mrs. Vargo testified that, when she heard the report of the gun, she ran to the porch to assist her husband, and that she looked out and saw defendant with a gun in his hands. Defendant argues, and perhaps correctly, that this is the principal evidence fastening the crime charged upon him, and says it is wholly discredited and unworthy of belief, because it was shown that she did not at the preliminary hearing of defendant give this testimony either verbatim or in substance. It is argued, also, that because of the physical situation she could not have seen defendant even had he been standing at the point where she claims she saw him. As going to the credibility of her story, it is urged that she would not under the circumstances have endangered herself by stepping through the door to look for the man who had shot down her husband. It is said that her first thought would have been to give assistance to her husband, and that, if this part of her story were true, she would have called up the police and told them that defendant was the guilty party.

No doubt this argument was made to the jury, and of course it had their consideration. It is evident that English is not the mother tongue of the witness, and allowance must be made for discrepancies that will inevitably creep into the story of a witness who thinks in one language and talks in another. Nor can we forget that, at the time the police officers arrived and defendant's three friends and companions were arrested and brought to the house, this woman was laboring under the excitement produced by the shooting of her husband who was then suffering from what, so far as she knew, might be fatal wounds. She knew that the men brought into her house by police officers were friends and neighbors of defendant, and it is little wonder that she accused them, one and all, of having shot her husband.

Bruno v. State.

· According to defendant's story, he had been down town all that afternoon and evening. This story is corroborated, not only by defendant's friends whom we have named, but by another witness who testified that he had been with defendant a part of the time, and that he saw defendant board a street car at Fourteenth and Douglas streets about 10 o'clock. Another witness testified that he accompanied defendant to a picture show. Defendant testified that when he transferred from one street car line to another street car line at Sixteenth and Sprague streets, which is said to be only a few blocks from his home, he called up his wife by telephone. This, it may be inferred, is the telephone call which came to the home when the officers were present shortly before defendant's arrest. The testimony of defendant and his witnesses just mentioned is in direct conflict with the testimony of Vargo. However, in weighing defendant's evidence, it is worthy of mention at least that, if his story be true, he absented himself from his home all the afternoon and evening, not even returning for the evening meal; that he went to a picture show with a gentleman companion while his wife was at home; and that it did not occur to him to call up his home until the day was done, the evening's amusements over, and he was returning home and had reached a point only a few blocks from his own house. The jury were free to accept that story, but they were equally free to disbelieve it. The greater number of witnesses support defendant as to his whereabouts, but the weight of testimony is not necessarily determined by the number of witnesses. In determining the weight of evidence and credence to be given witnesses, the triers of fact are free to consider all the surrounding facts and circumstances. *Moore v. Williams, ante*, p. 342.

The second division of the brief is devoted to an argument in support of defendant's contention that, regardless of the disposition of the subject heretofore discussed, the proof is insufficient to show that defendant shot "with intent to kill." The statute on which the information was based, section 9553, Comp. St. 1922, would permit the drafting of an

Bruno v. State.

information charging defendant with shooting "with intent to kill, wound or maim." The county attorney saw fit to charge that defendant shot with intent to kill. The court properly instructed the jury that, before they would be warranted in finding defendant guilty, the proof should show that the shooting was done with this specific intent. Making this clause of the instruction the basis for the argument, defendant contends that the evidence is wholly insufficient to show the intent. It is ingeniously argued that the "range" of the shot extended from the victim's feet to his head, nearly 6 feet, that the bullets were light "bird-shot;" that little more than skin wounds were made; that, on the testimony of the state, the party discharging the gun stood at a distance of from 25 to 40 feet from the complaining witness when the shots were fired, but that the wide range of the charge proves that the shots were fired from a much greater distance, and that a person accustomed to the use of fire arms would know that the light bird-shot, fired from the distance shown, would not produce death. This argument is entitled to serious consideration. However, the record does not disclose the angle at which the victim's body stood to the line of shot. When struck by the first charge, Vargo was about to go upon his porch, and, while it is not clear, we may assume that he was ascending a set of steps. When struck by the second charge he was probably falling to the floor; if so, that charge might have inflicted wounds the entire length of his body, regardless of the range at which it was fired. The shot were light in weight it is true, nevertheless, if they had struck a vital part of the body, they might well have caused death. The court would not have been warranted in holding as a matter of law that the proof was insufficient to sustain a finding that the shots were fired with the intent charged.

Defendant sets out a paragraph from the instructions in which the court told the jury:

"The rule that a sane man is presumed to intend the necessary or the natural and probable consequences of his voluntary acts is not sufficient in a case where a man is charged

Bruno v. State.

with shooting with intent to kill to evidence the intent, and other and additional affirmative evidence that the shooting, if done by this defendant, was done with the intent to kill is necessary before you can find the defendant guilty beyond a reasonable doubt."

With this instruction as a basis, an argument is made that the proof is insufficient to sustain the verdict because of a failure, or an absence, of that "additional affirmative evidence" mentioned. This argument completely ignores the succeeding paragraph of the instructions, wherein the court properly told the jury:

"To constitute the offense charged in this case, the intent alleged in the information is necessary to be shown, but direct and positive testimony is not necessary to prove the intent. It may be inferred from the facts and circumstances shown by the evidence; and if you believe from the evidence, beyond a reasonable doubt, that the shooting, as alleged in the information, was done wilfully and intentionally, and was likely to be attended with dangerous consequences, the intent requisite to make out this case, as charged, will be presumed."

When the instructions are read as a whole, it is clear that the proof falls within the rule announced.

Defendant denies that there is sufficient evidence of malice to warrant the submission of the cause to the jury. There being competent evidence in the record from which the jury might find that defendant with a shotgun loaded with gunpowder and leaden bullets, at a comparatively short range, twice shot and inflicted wounds upon the person of the complaining witness, the question of malice, like every other question of fact presented, became a matter for the determination of the jury.

We have discussed the assignments of major importance. Those not discussed have been considered, but do not appear to be of such character as to warrant separate consideration. Defendant was not prejudiced by the ruling of the court in relation to any of them. He had a fair trial,

and the evidence is found ample to sustain the verdict of the jury, and the judgment is

AFFIRMED.